THE PEOPLE OF THE STATE OF NEW YORK, Respondent, *v.* THE TRUST COMPANY OF AMERICA, Appellant.

Tax — trust mortgages — tax on advances made on mortgages recorded prior to July 1, 1906 — when trustee not liable for payment of such tax.

Where, at the time a trustee accepted a trust under a mortgage given to secure the payment of bonds, the mortgage debt was taxable only in the hands of the owners and holders of the bonds then issued, and it does not appear that the trustee subsequently certified additional bonds or itself made advance of money, such trustee is not liable under later statutes (L. 1906, ch. 532; L. 1907, ch. 340; L. 1909, ch. 412) for the tax thereafter imposed by reason of the advancement of a further amount to the mortgagor.

*People* v. *Trust Co. of America*, 145 App. Div. 900, reversed.

(Argued February 28, 1912; decided March 19, 1912.)

APPEAL from a final judgment, entered June 24, 1911, upon an order of the Appellate Division of the Supreme Court in the third judicial department, which affirmed an interlocutory judgment of Special Term overruling a demurrer to the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William F. Corliss, Albert B. Boardman* and *John Guyton Boston* for appellant. The complaint does not state a cause of action. The statute in force at the time of the advance referred to imposed no liability upon the defendant, the trustee under a trust mortgage, to pay the tax thereon and no such liability could thereafter be

1912.]          Opinion, per CULLEN, Ch. J.          [205 N. Y.]

created. (*People ex rel. McKnight* v. *U. B. & P. Co.*, 63 Misc. Rep. 132; *City of Rochester* v. *Gleichauf*, 40 Misc. Rep. 446; *City of Rochester* v. *Bloss*, 185 N. Y. 42; *Laird* v. *Carton*, 196 N. Y. 169; *Matter of Pell*, 171 N. Y. 48; *Matter of Lansing*, 182 N. Y. 238; *Matter of Enston*, 113 N. Y. 174; *Matter of Vassar*, 127 N. Y. 1; *Matter of Fayerweather*, 143 N. Y. 114; *Matter of Harbeck*, 161 N. Y. 211.)

*Thomas Carmody, Attorney - General* (*Franklin Kennedy* of counsel), for respondent. This action lies to recover the taxes in question either at common law or under section 266 of the Tax Law, added thereto by chapter 412 of the Laws of 1909. (Gray on Lim. of Taxing Power, 583, § 1174; 2 Cooley on Taxn. [3d ed.] 836; *City of Rochester* v. *Gleichauf*, 40 Misc. Rep. 447; *City of Rochester* v. *Bloss*, 185 N. Y. 42; *People ex rel. Eisman* v. *Ronner*, 185 N. Y. 285; *People ex rel. McKnight* v. *U. B. & P. Co.*, 63 Misc. Rep. 132; *United States* v. *Chamberlain*, 219 U. S. 250; *City of Ithaca* v. *Cornell*, 75 Hun, 245; *Litchfield* v. *McComber*, 42 Barb. 288; *Litchfield* v. *Vernon*, 41 N. Y. 123; *League* v. *Texas*, 184 U. S. 156.)

CULLEN, Ch. J. This action is brought against the defendant, to whom, as trustee, was executed by the Union Bag & Paper Company a mortgage dated the 28th day of June, 1905, to secure the payment of bonds to be issued amounting in the aggregate to $5,000,000. The trust was accepted and the mortgage recorded in the office of the clerk of Saratoga county on June 29th, 1905. The complaint alleges that prior to July 1, 1906, the total amount of bonds issued thereunder aggregated $3,200,000, and that in February, 1907, a further sum of $400,000 was advanced under said mortgage to the Union Bag & Paper Company, the mortgagor. The complaint further alleges that there became due and payable from the

defendant to the clerk of the county of Saratoga a tax of fifty cents on each $100 of the further sum advanced, amounting to $2,000; the non-payment of the tax; that the state board of tax commissioners had notified the attorney-general of the failure to pay said tax, and that by reason thereof the People of the state were entitled to recover the amount of such tax, for which judgment is demanded.

The history of the legislation in reference to the taxation on mortgages, so far as material to the controversy, is as follows: By the statute of 1905 (Ch. 729) a tax of five mills on the dollar, uniform throughout the whole state, was imposed against the legal and equitable owners of any bond, note, coupon or other evidence of debt or obligation secured by any mortgage of real estate, and the same was exempted from local taxation. In 1906 (Ch. 532) a different scheme of mortgage taxation was provided, to take effect July 1st of that year, and applicable to mortgages recorded on or after that date. It prescribed a recording tax of fifty cents on each hundred dollars in lieu of the annual property tax prescribed by the statute of 1905. It also imposed on any future advances made on mortgages recorded prior to the 1st of July, 1906, a tax at the same rate to be paid to the same officer. The statute, however, did not prescribe by whom such tax should be paid. In 1907 (Ch. 340) the law was amended so as to provide that in case of subsequent advances made on a trust mortgage already recorded, an additional tax at the prescribed rate should be paid on the amount of such advance, and the trustee was forbidden to certify any bond or other obligation issued under the mortgage unless the tax was paid. The district attorney was authorized to maintain an action against the corporation making the mortgage to recover the amount of the tax. In 1909 (Ch. 412) the act was further amended so as to authorize the attorney-general, in the case of a trust mortgage, to maintain an action

against the trust mortgagee personally to recover the tax, and it is on this last statute that the present action has been brought.

We are unable to see any sound theory on which the judgment below can be sustained. We assume that the legislature may authorize new remedies for the collection of taxes previously imposed, but the question remains whether there ever was any valid imposition of the tax upon the defendant. In the absence of express provisions in the mortgage the duty of the trustee is confined to seeing that the mortgage is properly recorded; that bonds are certified only to the amount authorized by the mortgage, and, when the mortgagor defaults in the payment of the bonds or coupons secured by the mortgage, to the enforcement of the rights of bondholders either by entry on the mortgaged property or by legal proceedings to secure a foreclosure. The trustee has no property right in the mortgage. At the time the defendant accepted the mortgage the mortgage debt was, by the express provisions of the statute of 1905, taxable only in the hands of the owners and holders of the bonds or other evidences of debt secured by the mortgage. The tax imposed by that statute was a property tax. The mortgage at that time was subject to no recording tax, which is an excise tax, and so far as appears in the complaint the defendant has done nothing since to subject it to any liability to taxation. The legislature could not impose such a tax upon the defendant for a transaction which, at the time it was effected, was subject to no tax. . In *Matter of Pell* (171 N. Y. 48) this court held that a succession tax could not be imposed upon a remainder which had vested in title before any Inheritance Tax Law had been enacted. *Matter of Lansing* (182 N. Y. 238–242) is to the same effect. During the last ten years contracts for the sale of stocks have been subject to tax. It will hardly be suggested that the legislature could now tax the sale of stocks made prior to the enactment of the first statute

authorizing such tax.   The claim that the legislature can impose the tax on the defendant as trustee because it subrogates the trustee to the tax lien and authorizes it to maintain an action against whoever is liable for the tax has the merit of novelty.   We know of no principle on which one involuntarily, and not as the result of any act on his part, can be made surety for the obligation or debt of another, however responsible that other may be or whatever security may be given to the surety for the ultimate reimbursement of the sum exacted from him. But in this case, at very best, the opportunity for the trustee to indemnify itself seems remote and doubtful.   The complaint does not state when the bonds · issued under the mortgage mature, which may not be for many years to come.   As long as the mortgagor does not default the trustee has nothing to do with the payment of the coupons or bonds.   These are negotiable instruments and it is very doubtful whether the mortgagor itself could be given any right to make deductions from a coupon when presented for payment for the aliquot share of the mortgage tax to which the bond from which the coupon is taken is to be deemed subject. It is to be observed that though the Supreme Court of the United States has upheld the right of a state to tax a mortgage on real estate within its limits held by a non-resident (*Savings & Loan Society* v. *Multnomah County*, 169 U. S. 421), it seems still to adhere to the doctrine declared in the case of *State Tax on Foreign-Held Bonds* (15 Wall. [U. S.] 300) that negotiable bonds issued by a corporation and secured by a mortgage on property within a state are not subject to taxation by that state.   (*Blackstone* v. *Miller*, 188 U. S. 189 at p. 206.)   Many and possibly all of these bonds may be held without the state and, under the doctrine cited, might be immune from the taxing power of this state.   But if we assume that the mortgagor might have been authorized by law to make such deduction the trustee has no possible opportunity to do it.   It

seems unnecessary to pursue the discussion further. If the defendant, after the enactment of the recording tax, certified additional bonds and delivered them to the mortgagor for issue (which is possible), or if the defendant itself made the further advance of money (which, though possible, is highly improbable), neither of which facts are alleged in the complaint, different questions would be presented.

The judgment appealed from should be reversed and judgment given for the defendant on demurrer, with costs in all courts, with leave to plaintiff, within twenty days, to serve an amended complaint on payment of costs.

GRAY, HAIGHT, WERNER, WILLARD BARTLETT, CHASE and COLLIN, JJ., concur.

Judgment reversed, etc.